# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| *In re:* | ) | Case No. 17-27046 |
|     *Joseph M. McInerney,* | ) | |
| | ) | Hon. Timothy A. Barnes |
|           Debtor. | ) | |
| | ) | Chapter 7 |
| _____ | ) | _____ |
| | ) | |
| U.S. Small Business Administration, as Receiver | ) | |
| For Cardinal Growth, L.P., | ) | Adversary Proc. No. 18-00057 |
| | ) | |
|         Plaintiff, | ) | |
|       v. | ) | |
| | ) | |
| Joseph M. McInerney, | ) | |
|           Defendant. | ) | |

## <u>NOTICE OF MOTION</u>

To:    See Attached Certificate of Service

On **Tuesday, June 26, 2018 at 10:30 a.m,** the undersigned shall appear before the Honorable Timothy A. Barnes in Room 744 of the Dirksen Federal Courthouse, 219 S. Dearborn St., Chicago, Illinois and then and there present the attached **MOTION OF DEBTOR TO DISMISS AMENDED ADVERSARY COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6) AND BANKRUPTCY RULE 7012**, a copy of which is attached hereto and hereby served upon you.

Dated:  June 22, 2018               Respectfully Submitted,

                                     **JOSEPH M. MCINERNEY,**

                                     By:  <u>*/s/ Michael K. Desmond*</u>
                                         One of His Attorneys

Michael K. Desmond (#6208809)
Justin M. Herzog (#6324047)
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street, Suite 3600
Chicago, IL 60603
312-251-5287
mdesmond@fslegal.com
jherzog@fslegal.com

## CERTIFICATE OF SERVICE

The undersigned attorney states that on June 22, 2018, a copy of the attached:

### NOTICE OF MOTION

and

### MOTION OF DEBTOR TO DISMISS AMENDED ADVERSARY COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6) AND BANKRUPTCY RULE 7012

will be served on all counsel in accordance with the General Order on Electronic Case Filing and subject to the provisions of Fed. R. Civ. P. 5(b)(3), the Notice of Electronic Filing that is issued through the court's Electronic Case Filing System will constitute service under Fed. R. Civ. P. 5(b)(2)(D) and Fed. R. Crim. P. 49(b) as to all Filing Users in a case assigned to the court's Electronic Case Filing System. The individuals listed on the Manual Service List will be served by depositing a copy of same in the U.S. Mail at 10 S. LaSalle Street, Chicago, IL 60603 before 5:00 p.m., proper postage prepaid.

By: _/s/ Michael K. Desmond_

**Mailing Information for Case 18-00057 [as of 6/22/2018]**

**Electronic Mail Notice List**

- **Michael K Desmond**    mdesmond@fslegal.com, dorisbay@fslegal.com
- **Rae Kaplan**    rkaplan@financialrelief.com, yrodriguez@financialrelief.com; fbichl@financialrelief.com;kaplan.myecfmail@gmail.com;i-got-notices@financialrelief.com; jcabrales@financialrelief.com; R49775@notify.bestcase.com
- **Thomas A Smith**    tsmith@skgsmlaw.com

**Manual Notice List**

Joseph M. McInerney
530 Jackson Avenue
River Forest, IL 60305
*(Debtor)*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-27046 |
|     Joseph M. McInerney, | ) | |
| | ) | Hon. Timothy A. Barnes |
|         Debtor. | ) | |
| | ) | Chapter 7 |
| ———————————————————— | ) | ———————————————— |
| U.S. Small Business Administration, as Receiver | ) | |
| For Cardinal Growth, L.P., | ) | Adversary No. 18-00057 |
| | ) | |
|         Plaintiff, | ) | |
|     v. | ) | |
| | ) | |
| Joseph M. McInerney, | ) | |
|         Defendant. | ) | |

**MOTION OF DEBTOR TO DISMISS AMENDED ADVERSARY COMPLAINT
PURSUANT TO FEDERAL RULE 12(b)(6) AND BANKRUPTCY RULE 7012**

Defendant Joseph M. McInerney, ("Debtor"), by and through his attorneys, moves this

Court for entry of an order dismissing the Amended Adversary Complaint filed by the U.S.

Small Business Administration, as Receiver for Cardinal Growth, L.P. ("Receiver"), pursuant to

Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012, for failure to state a claim

upon which relief can be granted.   In support thereof, the Debtor states as follows:

## INTRODUCTION

Unwilling to accept the fact that it is the holder of a dischargeable contract claim, the

Receiver continues to cast about hoping to find some minor discrepancy in the Debtor's

schedules that will form the basis for an objection to the Debtor's discharge.   This is the

Receiver's second attempt to state such a claim and should be its last.   The Receiver's averments

of fraud, concealment and false oaths are wholly unsupported by any well plead facts, and are

1

simply insufficient to satisfy the specificity and particularity requirements of Federal Rule 9(b) and should be dismissed with prejudice.

In Counts I and II, the Receiver seeks to bar the Debtor's discharge pursuant to 11 U.S.C. 727(a)(2) and 727(a)(4) for allegedly understating his income and assets. Without any supporting facts, the Receiver ask this Court to essentially pierce the corporate veil of the Debtor's wholly owned companies and treat the income and corporate bank accounts of these entities  as though they belong to the Debtor, then bar his discharge for not disclosing them on his personal bankruptcy schedules.  These claims are simply baseless.

In Count III, the Receiver seeks to bar the Debtor's discharge pursuant to 11 U.S.C. 727(a)(3), and alleges the Debtor failed to preserve records substantiating scheduled debts for approximately 20 unsecured creditors, as well as his wholly owned company Banner Capital, which was scheduled as a contingent creditor.  There is no well pled allegation that the Debtor's failure to preserve records regarding a number of unsecured creditors prevented the Trustee, or the Receiver, from ascertaining the Debtor's financial condition or material business transactions, or required a forensic reconstruction of the Debtor's affairs. The Debtor has produced extensive business records and submitted to a 2004 examination, yet the Receiver fails to allege a single asset or material business transaction that was not properly accounted for. The lack of documentation for certain debts, especially contingent claims, by itself does not warrant a denial of discharge under 727(a)(3). The Debtor cannot be faulted for scheduling debts, contingent or otherwise, so as to preserve their discharge.

In Count IV, the Receiver alleges certain debts scheduled by the Debtor are false, and seeks denial of his discharge under section 727(a)(4). While the Receiver claims certain debts are false, it fails to allege a single fact which would support such a claim and the allegations in

Count IV amount to nothing more than speculation, and are simply insufficient to satisfy the specificity and particularity requirements of Federal Rule 9(b). Finally, in Count V the Receiver alleges that the Debtor made a false oath by failing to disclose certain small transfers to his business, Banner Capital, in the year prior to filing bankruptcy as payments of debt. Without any supporting facts, the Receiver jumps to the conclusion that such transfers constitute debt payments and not capital contributions.  The Receivers allegations, without more, are simply insufficient to state a claim for denial of discharge under 727(a)(4)(A), based on a false oath.

    For the reasons discussed more fully below, the complaint should be dismissed with prejudice.

## <u>BACKGROUND</u>

    The Receiver is the plaintiff in a pre-petition breach of contract lawsuit pending against the Debtor in the United States District Court for the Northern District of Illinois under the caption *U.S. Small Business Administration, as Receiver for Cardinal Growth, L.P. v. McInerney Case No. 16-07099*. (*Cmplt*. at ¶1 at n. 2) The Receiver initiated the underlying lawsuit to recover an alleged unfunded capital commitment from the Debtor pursuant to Cardinal's Limited Partnership Agreement. *Id.* This alleged contract claim was contingent, unliquidated and disputed as of the petition date, and was listed on the Debtor's schedules as such. [*Dkt. No.* 59]. The Debtor denied the material allegations in the complaint and filed a jury demand in the District Court.

    On September 11, 2017, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  (*Cmplt*. at ¶6; *Dkt. No.* 1).   On September 20, 2017, the Debtor filed his Schedules and Statement of Financial Affairs.  [*Dkt. No.* 14].  The Receiver subsequently filed an Objection to Debtor's discharge. (*Cmplt*. at ¶6). Later, on April 11, 2018, the Debtor filed

various amendments to his Schedules and Statement of Financial Affairs. [*Dkt. Nos.* 59-61].  On

Debtor's Schedule I, debtor listed monthly income of $0.00 for himself at the time of filing.

(*Cmplt.* at ¶8-9; *Dkt. No*. 14). His amended schedules similarly listed monthly income in the

amount of $0.00. [(*Cmplt.* at ¶9]. Debtor's amended SOFA listed gross income for 2017 in the

amount of $-69,403.05. [*Dkt. No. 61*].

The Receiver alleges that on December 6, 2017, the Debtor appeared at his Rule 2004

examination at which time he testified that he had not received any W-2 income for 2017, and

that he did not anticipate receiving any 1099 income for 2017. (*Cmplt.* at ¶10).  The Debtor's

petition discloses that he did business under various names including Banner Capital Corp.,

Miltown Malbay, LLC and Eddy Realty Group LLC.  (*Cmplt.* at ¶13).  At his 2004 examination,

Debtor produced bank statements and records for the various business entities owned or

controlled by the Debtor. (*Cmplt.* at ¶12).  The Receiver contends that these records and

statements show income, and also reveal transfers to the Debtor's personal bank account and

payments for alleged personal expenses. (*Cmplt.* at ¶15).  The Receiver asserts that the Debtor's

failure to list these transfers as income on his schedules, as well as his allegedly false testimony

at his 2004 exam, constitute a concealment of income and a false oath. (*Cmplt.* at ¶¶21-22).

Based on these largely unsupported allegations the Receiver seeks denial of the Debtor's

discharge pursuant to 727(a)(2) and 727(a)(4).

In addition, the Receiver seeks denial of the Debtor's discharge pursuant to section

727(a)(3), based on the Debtor's alleged failure to preserve or maintain complete records for

approximately 20 unsecured creditors listed in his Schedules. (*Cmplt.* at ¶30). Many of these

scheduled debts are listed as unknown, contingent, unliquidated, and/or disputed in both his

originally filed schedules and amended schedules. [*Dkt. Nos. 14,* 59]. The complaint fails to state

4

why "some or all" of these 20 debts are believed to be false.  Then the Receiver contends that because some of the records concerning certain unsecured creditors may be incomplete it is unable to determine whether the Debtor's debts are primarily consumer debts or business debts, which has allowed the debtor to avoid the U.S.C. §707 means test. (*Cmplt.* at ¶34).  The Receiver does not allege the Debtor would have failed the means test even if it was applied. The Receiver contends that the Debtor's alleged failure to maintain complete records of each of his debts makes it unduly burdensome to determine the Debtor's financial condition and material transactions which affect that condition. (*Cmplt.* at ¶28). The Receiver does not allege that the Debtor failed to disclose any significant asset or any material business transaction, nor does the Receiver allege that the Trustee was unable to administer the estate because of a lack of financial information.

The Receiver also seeks denial of the Debtor's discharge pursuant to section 727 (a)(4)(B) by alleging some of the debts listed by the Debtor in his Schedules are false, and were known to be false when presented in the Debtor's Schedules. (*Cmplt.* at ¶¶43-44).  The Receiver fails in all respects to identify how the scheduling of these unsecured, often contingent and/or disputed, debts constitute a false claim which would warrant a denial of the Debtor's discharge.

Finally, the Receiver alleges that identifying Banner Capital as a creditor is a "sham." (*Cmplt.* at ¶48].  Alternatively, if Banner Capital is a legitimate creditor, the Receiver alleges that between January and September of 2017, the Debtor made 80 separate transfers to Banner from his personal bank account totaling, in aggregate, over $22,000.00.  (*Cmplt.* at ¶53).  The Receiver then alleges that these transfers were payments of debt to insiders and were not disclosed on the Debtor's Statement of Financial Affairs. (*Cmplt.* at ¶¶51,52). As a result, the Receiver alleges the Debtor made a false oath. (*Cmplt.* at ¶54).

## **STANDARD**

For the Receiver's complaint to pass muster as a general matter, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted). A Plaintiff must provide more than speculative allegations and must allege "more than labels and conclusions". *Id.* at 555. Therefore, "a formulaic recitation of the elements of a cause of action will not do." *Id.* It is not enough to merely recite the elements of a statute, or to string together legal conclusions. *See Twombly*, 550 U.S. at 555.; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)("in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Moreover, "the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). The Receiver's entire complaint falls woefully short of the *Twombly-Iqbal* standard.

### I.     COUNT I FAILS TO ALLEGE FACTS SUFFICIENT TO STATE AN OBJECTION TO DISCHARGE UNDER 11 U.S.C. §727(A)(2).

Initially in Count I, the Receiver seeks denial of the Debtor's discharge under section 727(a)(2) on the basis that the Debtor omitted purported income from his Schedules and Statement of Financial Affairs to conceal his actual income with intent to hinder, delay, or defraud the Receiver. (*Cmplt.* at ¶8-¶11). Generally, to plead a claim based on actual fraud the

6

complaint "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b); Fed.R.Bankr.P 7009(b). Stating particularity under Rule 9(b) requires alleging the "who, what, when, where, and how of the fraud-the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). Conclusory allegations without a description of the underlying fraudulent conduct are not sufficient under Rule 9(b). *Id.* The complaint must establish "facts sufficient to inform debtor of charges against him." *Bunch v. Kerr (In re Kerr)*, 58 B.R. 171, 173 (Bankr. E.D. Ark. 1985). This "is especially crucial in objections to discharge because of the Bankruptcy Code's general policy of granting a debtor a discharge forthwith." *Id.*

Under section 727(a)(2)(A), an objection to discharge will be sustained only if the objecting party alleges and proves the following elements: (1) the debtor transferred, removed, destroyed, mutilated, or concealed property; (2) belonging to the estate; (3) within one year before filing the petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004); accord *Saluja v. Mantra (In re Mantra)*, 314 B.R. 723, 729 (Bankr. N.D. Ill. 2004). A proper objection to discharge under section 727(a)(2)(A) "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *Kontrick*, 295 F.3d at 736 (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)). Both elements must have been present during the year before bankruptcy. *Kontrick*, 295 F.3d at 736. Here, all of the Receiver's allegations relate to disclosures made by the Debtor after the bankruptcy filing.

The complaint is fraught with unsupported conclusory allegations accusing the Debtor of false and material disclosures. Without any supporting facts, the Receiver alleges the Debtor

filed false Schedules by failing to disclose his income on Schedule I (*Cmplt.* at ¶8,9), and gave false testimony when he testified during his Rule 2004 examination that he had not received any W-2 income for 2017 and did not "anticipate" receiving any 1099 income for 2017. (*Cmplt.* at ¶10). The Receiver also alleges that on April 11, 2017 [sic], the Debtor filed his Amended Schedules and Statement of Financial Affairs which disclosed year to date losses from operating his businesses for 2017 in the amount of -$69,403.05, and losses for 2016 of -$107,891.00.[1] (*Cmplt.* at ¶11). Without any supporting facts, the Receiver alleges such disclosures were both false and material.[2] *Id.*

The Receiver does not allege the Debtor received a regular salary from his business entities, which should have been reported on Schedule I, nor does the Receiver allege the Debtor received a W-2 or Form 1099 for the year 2017. Rather, the Receiver alleges that Debtor produced bank statements and records for the various business entities owned or controlled by the Debtor, which identify revenue earned by those entities purportedly resulting from the efforts of the Debtor. (*Cmplt.* at ¶¶15-16). In addition, the Receiver identifies alleged transfers from Banner Capital, one of Debtor's entities, to the Debtor's personal bank account and jumps to the unfounded conclusion that such transfers constitute income to the Debtor. (*Cmplt.* at ¶16). Finally, the Receiver alleges that Banner Capital paid for certain expenses such as restaurant visits or unidentified personal expenses and those constitute implied income to the Debtor which should have been disclosed on the Debtor's Schedules. (*Cmplt.* at ¶¶17-18).

What the Receiver is asking this Court to do is require the Debtor to ignore the separate corporate identity of each of his wholly owned entities, treat the revenues generated by these

---

[1] The Debtor filed his Amended Schedules and Statement of Financial Affairs on April 11, 2018. [*See* Dkt. Nos. 59-61]

[2] The Receiver fails to allege a single fact supporting its allegation that the Debtor's business losses for 2016 in the amount of -$107,891.00 were false.

entities as though they belong to the Debtor, then bar his discharge for failing to disclose this income on his personal bankruptcy schedules. These claims are simply baseless. The revenues generated by Banner Capital, or any of the Debtor's other wholly owned entities, belong to those entities not the Debtor. The Receiver has alleged no facts establishing a corporate veil piercing or alter ego claim, which would treat those entities and the Debtor as one in the same, nor as discussed below, is there any legal basis to do so.

Pursuant to Rule 2004, the Debtor produced to the Receiver all of his personal and business Income Tax Returns dating back to 2014. The Receiver is well aware, Banner Capital, is a Subchapter S corporation for income tax purposes.[3]  Any profits or losses earned by the Debtor's companies are taxed to the Debtor on his personal returns. The income from those entities is reflected in question 4 of Debtor's Amended Statement of Financial Affairs. [*Dkt. No. 61*]. Therefore, contrary to the allegation by the Receiver, withdrawals or distributions from an S Corporation to its shareholder are not income to the Debtor. *United States Trustee v. Varner*, 2015 Bankr. Lexis 2144 *21-22 (N.D. Ohio June 30, 2015).  As the Bankruptcy Court in *Varner* noted:

> This is hornbook subchapter S practice demonstrating the benefits and detriments of this corporate form. Such an owner may have years with loads of profits creating lax liability without cash available to pay it, and other years with the opposite outcome, available cash and tax losses. An S corporation is equal parts blessing and curse.

*Id.*    The Internal Revenue Code provides common sense guidance in determining whether certain transactions produce income. *In re Curcio*, 387 B.R. 278, 282-283 (Bankr. N.D. Fla

---

[3] A Subchapter S corporation is a small corporation that has elected, under the Internal Revenue Code ("IRC"), to be taxed similarly to partnerships. When a corporation has elected to be taxed under Subchapter S, the corporation itself is not subject to income tax. Rather, the income tax is imposed directly on the shareholders on a pro rata basis. In other words, the corporation's income "passes through" to the shareholders, who then report that income on their individual tax returns. **See** <u>26 U.S.C. § 1366.</u> See Friewdman v, Comm'r, 216  F.3d 537, 538 n. 2 (6th Cir 2000).

2008) (Internal Revenue Code provides guidance for determining income as used in 101(10A)). Based on the above, distributions from Banner Capital to the Debtor do not result in income that should have been disclosed on his bankruptcy schedules. Likewise, the fact that Banner paid certain non-deductible personal expenses does not mean the Debtor under reported his income in his schedules.

Finally, The Receiver's objection under Count I is premised entirely upon the Debtor's alleged concealment of income, however the complaint does not allege a single well pled fact that any of the so-called "deposits and transfers" were made with any type of improper intent to hinder, delay, or defraud. There is certainly no allegation that the Debtor withheld or refused to divulge information in order to hinder the Receiver's investigation. To the contrary, the Receiver admits that the Debtor disclosed all of his bank records for his individual and business accounts, and testified at his 2004 exam, and this disclosed information forms the basis of the complaint. (*Cmplt.* at ¶12).

The allegations in Count I of the complaint are simply insufficient to state a claim for concealment of income, which would support a denial of discharge under section 727(a)(2).

## II.    THE PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO ESTABLISH A FALSE OATH WARRANTING DENIAL OF DISCHARGE UNDER §727(a)(4)(A).

The Receiver also contends that the Debtors alleged failure to disclose [this unidentified income] on his schedules constitutes the making of a false oath and constitutes grounds for denial of discharge under 11 U.S.C. 727 (a)(4)(A). (*Cmplt.* at ¶22). This claim likewise fails for lack of specificity and particularity and also fails to meet the pleading standards required under Fed. R. Civ. P. 9(b).

In order to prevail on an objection to discharge under section 727(a)(4)(A), a creditor must establish five elements: (1) the debtor made a statement under oath; (2) the statement was

10

false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Grochocinski v. Campbell (In re Campbell)*, 475 B.R. 622, 638 (Bankr. N.D. Ill. 2012).

For the same reasons discussed above, the complaint fails to state a claim for denial of the Debtor's discharge under section 727(a)(4)(A). The Receiver does not identify a single alleged false statement made by the Debtor with any factual specificity or particularity. While the Receiver alleges the losses disclosed by the Debtor in question 4 of his Amended Statement of Financial Affairs were false, the Receiver fails to allege a single fact supporting its allegation. (*Cmplt.* at ¶11). As discussed above, the Receiver's allegations that the Debtor received corporate distributions from his Subchapter S Corporation is simply not sufficient. Additionally, the Receiver alleges the Debtor gave false testimony when he testified during his Rule 2004 examination that he had not received any W-2 income for 2017 and did not "anticipate" receiving any 1099 income for 2017 (*Cmplt.* at ¶10), however the Receiver does not allege the Debtor actually received a W-2 or Form 1099 for the year 2017 or any other tax year. Generic allegations, such as these, are simply insufficient to satisfy pleading requirement of Rule 9(b).

Aside from the purely conclusory statements, the Receiver fails to allege how there was any fraudulent intent with regard to the statements made by the Debtor. The complaint also fails to allege, other than in a purely conclusory manner, how this so-called undisclosed income relates materially to Debtor's financial condition. (*Cmplt.* at ¶¶8-10) Bare bones allegations, such as these, that are simply recitations of the elements in the statute and unsupported legal conclusions are simply insufficient to state a claim for a denial of discharge under section 727(a)(4)(A). *Grochocinski, 475 B.R. at 628.*

11

### III.   THE DEBTOR'S FAILURE TO SCHEDULE A CORPORATE BANK ACCOUNT DOES NOT WARRANT A DENIAL OF DISCHARGE UNDER §727(A)(2) & §727(A)(4).

In Count II, the Receiver also objects to Debtor's discharge under 727(a)(2) and 727(a)(4) for failing to disclose corporate bank accounts in his Schedules, which were allegedly used for personal or family expenses. These allegations are wholly without merit and should also be dismissed.

The Statement of Financial Affairs and Schedules only require disclosure of open accounts held in the name of the debtor and do not include corporate or other accounts. *Manning v. Watkins* (*In re Watkins*), 474 B.R. 625, 644 (Bankr. N.D. Ind. 2012) (overruling objection to discharge where debtor failed to schedule corporate bank account used for personal expenses). Schedule B can only be construed to require disclosure of accounts held in the name of the debtor and does not encompass all "accounts from which the debtor drew money for personal purposes". *Id*.

Further, the corporate bank accounts are not assets of the Debtor. "When a debtor owns shares of a corporation, the shares are property of the Debtor that become property of the bankruptcy estate when the bankruptcy is filed, but the assets of the corporation are not assets of the debtor and do not become property of the bankruptcy estate." *Trivedi v. Levine* (*In re Levine*), Nos. 14 B 10740, 14 A 00461, 2014 Bankr. LEXIS 5161, at *4 (Bankr. N.D. Ill. Dec. 16, 2014), citing *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990).   The Receiver has alleged no facts establishing a corporate veil piercing or alter ego claim, which would bring the corporate bank accounts into the estate, nor is there any provision in the plain language of Section 727(a)(2)(A) that would provide a legal basis to do so.[4]   *Trivedi* at *8.

---

[4] Reverse veil piercing claims have been rejected under Illinois law.   See *Gierum v. Glick*, 568 B.R, 634, 662-63 (Bankr. N. D. Ill. 2017).

Finally, the Receiver fails to allege how the failure to disclose the corporate bank accounts relate materially to the bankruptcy. The complaint also fails to plead the requisite intent necessary for an objection to discharge under 727(a)(2) and 727(a)(4). There is simply no basis to deny Debtor's discharge based upon his failure to disclose corporate bank accounts on Schedule B and for these reasons Count II of the Receiver's complaint should be dismissed.

## IV. COUNT III DOES NOT ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF UNDER §727(A)(3).

The Receiver's objection to discharge under section 727(a)(3), based on the Debtor's alleged failure to preserve records regarding certain creditors should also be dismissed. Section 727(a)(3) provides that the court shall deny a debtor a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

Section 727(a)(3) puts an affirmative duty on a debtor to produce books and records that accurately document his financial affairs. *See Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999). Courts have held that a denial of discharge is warranted when creditors or trustees are "required 'to sift through documents and attempt to reconstruct the flow of the debtor's assets.'" *In re Juzwiak*, 89 F.3d 424, 429, (7th Cir. 1996)(court upheld denial of discharge where debtor failed to maintain adequate sales records or documents substantiating business expenses). However, section 727(a)(3) "does not require absolute completeness in making or keeping records". *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761, (9th Cir. 2008). Rather, a debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.*

13

Courts have analyzed the purpose of section 727(a)(3) and held that the provision is to ensure that creditors and trustees have enough information to ascertain the debtor's financial condition with substantial completeness and accuracy without the need to resort to *post hoc* forensic investigation to assemble the debtor's financial transactions from chaos. *Schaumburg Bank & Trust Co. v. Hartford (In re Hartford)*, 525 B.R. 895, 908-909. (Bankr. N.D. Ill. 2015). *See also; Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 493-494 (Bankr. N.D. Ill. 2016) (the harsh remedy of denial of discharge is to ensure that debtors without proper books and records do not frustrate a trustee's ability to liquidate prepetition assets to satisfy prepetition debts).

Courts have held that a denial of discharge is warranted when a debtor's financial condition is difficult or impossible to ascertain and the purpose of section 727(a)(3) is frustrated. See *Juzwiak*, 89 F.3d at 430. In *Juzwiak,* the court upheld the denial of discharge to a debtor where a creditor objected to discharge because they could not trace the proceeds of sales of goods it sold the debtor, and records pertaining to those transactions were insufficient. *See* 89 F.3d at 429. There, the court held that a creditor should not have to organize records, hire an accountant, interview the debtor, or otherwise reconstruct transactions and missing records. *Id.*

Similarly, in *Scott,* the Court held that debtors' "impenetrable financial maze" made it nearly impossible for the trustee to ascertain the financial condition and complex business transactions of the debtor. 172 F.3d at 970. The trustee in *Scott* would have been forced to comb through 435 boxes of unorganized material in order to possibly ascertain the debtor's financial condition, thus the debtors' discharge was denied under section 727(a)(3). *Id.  See also; Leibowitz v. Tanglis (In re Tanglis)*, 344 B.R. 563, 569-570(N.D. Ill. 2006)(denying discharge of debtor who failed to file income tax returns and failed to produce a single credit card statement where vast majority of debt was credit card debt); *Ochs v. Nemes (In re Nemes)*, 323 B.R. 316,

14

326. (Bankr. E.D. N.Y. 2005) (denying discharge of debtor who failed to schedule all debts, failed to produce records for more than two-thirds of debt, and failed to appear at 2004 examination); *Bodenstein v. Wasserman (In re Wasserman)*, 332 B.R. 325, 332 (Bankr. N.D. Ill. 2005) (denying discharge of debtor who failed to produce credit card statements, had minimal bank statements, failed to file any business tax returns and failed to file personal tax returns for six years).

When analyzing the stringent standards set out in *Scott* and *Juzwiak* courts have held the mere allegation of a failure to preserve books and records is not enough. *Irmen*, 379 B.R. at 299. Instead it must be determined that "failure has resulted in an inability to prepare accurate schedules and statement of financial affairs for the debtor, or, in the alternative, whether the failure has made it unduly burdensome on a trustee" to ascertain the debtor's current financial condition. *Hartford,* 525 B.R. at 911. Further, courts have held that the detailed record keeping requirement imposed under 727(a)(3) is limited to debtors who are engaged in extensive business transactions in which all of their assets and liabilities are implicated. *In re Tauber*, 349 B.R. 540, 556 (Bankr. N.D. Ind. 2006). *See also Scott*, 172 F. 3rd at 969 (an affirmative duty existed to create books and records accurately documenting his business affairs).

This case is easily distinguishable from cases warranting a denial of discharge under section 727(a)(3). In those cases the trustee or creditor could not ascertain the debtor's financial condition and were forced to reconstruct the debtor's business dealings and transactions. *See Juzwiak*, 89 F.3d at 430. In the present case, there is no allegation that the Debtor failed to maintain adequate business records or that the Debtor's business transactions were not adequately accounted for. [5]   There are certainly no allegations that the Receiver was forced to

---

[5] Here, the Debtor has fully cooperated with the Receiver, produced extensive personal and business records, bank statements and tax returns, and submitted himself to a five hour Rule 2004 deposition. The

reconstruct the Debtor's financial affairs, conduct a forensic investigation, hire an accountant, or assemble the Debtor's financial transactions from chaos.

Here the Receiver alleges the Debtor had incomplete, or no records for approximately 20 of his originally scheduled unsecured creditors.  (*Cmplt*. at ¶30). Additionally the Receiver alleges that the Debtor failed to produce an instrument evidencing a debt with his wholly owned S-Corporation Banner Capital. [6]  (*Cmplt*. at ¶32).  Banner Capital was identified as a contingent creditor for an "unknown" amount in the Debtor's Amended Schedules filed on April 11, 2018 [*Dkt No.* 59]. The only allegation the Receiver makes with regard to any business records, is that Debtor is unable to determine how much money he owes to Banner. (*Cmplt*. at 39b). This however is disingenuous, as Banner is clearly listed on his amended schedules as a contingent creditor. [*Dkt. No.* 59].

The Receiver fails to allege how missing documents relating to a limited number of creditors, as well as contingent creditors, are material to ascertaining the Debtor's financial condition or business transactions.  Alternatively, the Receiver contends that the Debtor may be a consumer debtor.  (*Cmplt*. at ¶¶33-34).  If that is true, then the higher standard of record keeping established in *Scott* and *Juzwiak* would not apply. See *In re Tauber*, 349 B.R. at 549-550; *Wolters v. Ko (In re Ko), 2012 Bankr. Lexis 5547 *15 (Bankr. N.D. Ill. 2012)* (stringent record keeping requirements do not apply to consumer debtors).

Here, the amount of debt the Receiver complains of represents 26% of the total unsecured debt and 16% of the Debtor's total scheduled debts.  [*Dkt. No.* 14].  Even if the debt the Receiver

---

Receiver has had full access to the Debtor's accounting records and issued a subpoena to the Debtor's former accountant, yet the Receiver has failed to allege a single asset or material business transaction that was not properly accounted for.

[6] The Receiver conveniently overlooks the fact that the Debtor produced numerous business records regarding shareholder loans and advances from/to Banner Capital, as well as intercompany debts in connection with his Rule 2004 exam.

complains of is disregarded, it has no material effect on the Debtor's financial condition or the outcome of the bankruptcy case. The Receiver alleges no facts which would explain why the Debtor's failure to produce documents for debts owed to a limited number of unsecured creditors prevents the trustee or creditors from determining the debtor's current financial condition. Here, the Chapter 7 Trustee had no problem determining the Debtor's financial condition, or his business affairs, as he filed a Report of No Assets on January 31, 2018 [*Dkt No.* 57].

The complaint does not allege that Debtor failed to provide documentation, including tax returns or bank statements, from which his overall financial condition could be ascertained, nor does it allege that the Debtor failed to keep or provide adequate records of his assets or business transactions. The Receiver admits that the Debtor disclosed all of his bank records for his individual and business accounts. (*Cmplt.* at ¶26).

Finally, the fact that the Debtor may be missing documentation for certain creditors does not make it a *fait accompli*.  The lack of documentation for a particular debt, or debts, by itself, does not warrant the denial of discharge under section 727(a)(3). *Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 493 (Bankr. N.D. Ill. 2016) (holding that the absence of records standing alone is insufficient to invoke section 727(a)(3)).  Additionally, a debtor "cannot be faulted for exercising his legal right to list [debts] so as to preserve their discharge" *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 350 (Bankr. E.D.N.Y. 1992). (See n.4, citing 11 U.S.C. §101(12), §101(5)(A) and §523(a)(3)).  The Receiver's apparent theory that a loan must be in writing to be enforceable is simply not the law in the State of Illinois. See *Barnes v. Michalski*, 399 Ill. App. 3d 254, 267 (4th Dist. 2010) (oral loan is enforceable even where terms of repayment are not expressly agreed).

### V. FAILURE TO SATISFY MEANS TEST IS NOT AN INDEPENDENT BASIS FOR OBJECTION TO DISCHARGE.

The Receiver makes general allegations concerning its inability to determine whether the Debtor can satisfy the means test under 11 U.S.C. 707(b)(2)(A)), but fails in all respects to assert how this is relevant to its objection to discharge. (*Cmplt*. at ¶ 34). Failure to satisfy the means test is not an independent basis to object to discharge, but instead may be a reason for conversion or dismissal of the bankruptcy case. S*ee* 11 U.S.C. §707(b). There is no well pled allegation as to how the means test is material to a determination of debtor's financial condition. Given the level of expenses identified on the Debtor's schedules, which the Receiver does not challenge, along with the complete failure of the Receiver to identify or quantify the debtor's so-called undisclosed income, the Debtor and this Court are left only to guess what, if any, impact application of the means test would have on the outcome of the bankruptcy case. *See* Schedule I & J. [*Dkt. No*. 14]. Further, the complaint does not allege Debtor would have failed the means test even if it applied. The Receiver's allegations relating to the means test amount to nothing more than speculation and innuendo and are simply insufficient to support any type of claim for denial of discharge.

### VI. COUNT IV DOES NOT ALLEGE FACTS SUFFICIENT TO STATE AN OBJECTION TO DISCHARGE UNDER §727(A)(4)(B).

Section 727(a)(4)(B) prohibits the granting of a discharge to a debtor who "knowingly and fraudulently, in or in connection with the case presented or used a false claim." *Hendon v. Oody (In re Oody*), 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000). (analyzing general standards under section 727(a)(4)(B)). Courts that have considered objections to discharge for presenting a false claim have required the plaintiff to prove that the debtor "presented or used an inflated or fictitious claim." *Id*. (citations omitted). Such cases generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of

18

claim. *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 722 (Bankr. D. Ga. 1996). In order to warrant a denial of discharge under section 727(a)(4), there must be an intentional act and it must be material.  *Natale,* 136 B.R. at 349 (dismissing a complaint objecting to discharge under general provisions of section 727(a)(4)(A)-(B)). "The existence of omissions, misstatements, or inaccuracies in bankruptcy petitions do not necessarily establish fraudulent intent." *Id*.

The Receiver alleges that "some or all" of the Debtor's scheduled debts are false, were known by the Debtor to be false and were presented with fraudulent intent.  (*Cmplt*. at ¶¶43-44). The Receiver, of course, never identifies with any specificity or particularity which claims are false.  The Receiver makes nothing more than conclusory allegations about the falsity of these debts, which are insufficient to satisfy the requirements of Rule 9(b). (*Cmplt*. at ¶44).  Other than missing documents, there is no well plead allegation establishing why the Receiver has any good faith basis to believe that any one of these claims is false.  (*Cmplt*. at ¶¶43-44). The Receiver also fails to plead any facts which would establish the Debtor's knowledge or actual fraudulent intent. Pleadings containing merely conclusory allegations are insufficient to inform the Debtor of the charges against him and are therefore insufficient to maintain an objection to discharge.

When analyzing a complaint objecting to a debtor's discharge under section 727(a)(4)(B) courts have noted that  a debtor "cannot be faulted for exercising his legal right to list [scheduled debts] so as to preserve their discharge" *Natale,* 136 B.R at 350 at n. 4)(citing 11 U.S.C. §101(12), §101(5)(A) and §523(a)(3)).  Courts have held that it is essential for debtors to list all creditors, especially those creditors who are friends and family, as these parties are more likely to be the recipient of avoidable transfers and a debtor's failure to list these creditors may frustrate a trustee's investigation. *Cohn,* 561 B.R. at 496 (granting objection to discharge under section 727(a)(4) when debtor <u>failed</u> to schedule loans from family and friends).

19

### VII.   COUNT V FAILS TO STATE A CLAIM FOR DENIAL OF DISCHARGE UNDER 727(A)(4)(A).

The Receiver accuses the Debtor of making a false oath by virtue of the fact that the Debtor has listed his wholly owned company, Banner Capital, as a contingent creditor in his amended schedules. (Count IV, see also *Cmplt*. at ¶48).   Alternatively, the Receiver alleges that between January and September of 2017, the Debtor made 80 separate transfers to Banner from his personal bank account totaling, in aggregate, over $22,000.00.   (*Cmplt*. at ¶53).   The Receiver then jumps to the unfounded conclusion that if Banner Capital was a creditor, then these transfers constituted debt payments, and should have therefore been disclosed in response to Question No. 7 in the Debtor's Statement of Financial Affairs. (*Cmplt*. at ¶51).  According to the Receiver, the Debtor's failure to do so constitutes a false oath. (*Cmplt*. at ¶52).

First, the Debtor has every right to list Banner Capital as a contingent creditor, to the extent it is ever determined that any corporate distributions received by the Debtor exceeded his capital account. *See* 11 U.S.C. §101(5)(A). Second, to the extent the Debtor put money back into Banner Capital so it could pay its bills, does not mean such payments constitute a repayment of debt, requiring disclosure in response to SOFA No. 7. Courts have recognized that it is not uncommon for small business owners to transfer personal funds to their closely held businesses, particularly single-member LLC's so they can pay their operating expenses. *Spohn v. Carney* (*In re Carney)*, 558 B.R. 250, 266 (N.D. Ill. 2016)(overruling creditor's objection to discharge under 727(a)(4)).

To warrant a denial of discharge under section 727(a)(4), there must be an intentional act and it must be material. *Natale,* 136 B.R. at 349. *See also Carney* 558 B.R. at 267.  There is no allegation by the Receiver that any of these payments to Banner Capital were made with fraudulent intent.  Additionally, other than in a purely conclusory manner, the Receiver fails to

20

allege how there was any fraudulent intent with regard to the Debtor's answers to SOFA No. 7, nor has the Receiver alleged with any specificity or particularity as to how this disclosure was material to Debtor's financial condition.    "The existence of omissions, misstatements, or inaccuracies in bankruptcy petitions do not necessarily establish fraudulent intent." *Natale,* 136 B.R. at 349.

The allegations in Count V are simply insufficient to state a claim for denial of the Debtor's discharge under section 727(a)(4) and should be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Joseph McInerney respectfully requests the entry of an order dismissing Counts I through V of this adversary complaint with prejudice, awarding the Debtor's attorney's fees and costs incurred in responding to the complaint, and granting such other relief as this Court deems just and proper.

Dated:  June 22, 2018                                            Respectfully Submitted,

**JOSEPH M. MCINERNEY,**


By:  /s/ *Michael K. Desmond*
One of His Attorneys


Michael K. Desmond (#6208809)              *Debtor's Counsel*
Justin M. Herzog (#6324047)                 Raffy A. Kaplan (#6275234)
FIGLIULO & SILVERMAN, P.C.              KAPLAN LAW FIRM LLC
10 S. LaSalle Street, Suite 3600             250 East Washington St., Suite 1501
Chicago, IL 60603                             Chicago, IL  60602
312-251-5287                                  (312) 294-8989
mdesmond@fslegal.com                        rkaplan@financialrelief.onmicrosoft.com
jherzog@fslegal.com